IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMIQUE A. UPSHAW, | ) | |
| Plaintiff | ) | C.A. No. 15-256 Erie |
| | ) | |
| v. | ) | District Judge Rothstein |
| | ) | Magistrate Judge Baxter |
| BOBBY MEEKS, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 30], be granted and that this case be dismissed.

### II.  REPORT

#### A.  Relevant Procedural History

On or about October 21, 2015, Plaintiff Domique A. Upshaw, an inmate formerly incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"),[1] filed this *pro se* civil rights action by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). He subsequently filed an amended complaint on February 11, 2016, which superseded the original complaint and is the operative pleading in this case [ECF No. 20]. Named as Defendants are:

---

[1] Plaintiff is currently incarcerated at the Federal Correctional Institution at Pekin, Illinois.

1

Bobby L. Meeks, Warden at FCI-McKean ("Meeks"); J. Zeher, Case Manager at FCI-McKean ("Zeher"); B. Eklund, Lieutenant at FCI-McKean ("Eklund"); Dr. Robicheau, Psychologist at FCI-McKean ("Robicheau"); T. Smith, Counselor at FCI-McKean ("Smith"); FCI McKean; United States of America ("United States"); and Federal Bureau of Prisons ("BOP").

In his amended complaint, Plaintiff claims that his rights under the first, fifth, and eighth amendments to the United States Constitution were violated as a result of his refusal to sign a contract to receive a new mattress for his cell on October 22, 2014. Plaintiff seeks injunctive relief and punitive damages.

On August 26, 2016, Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 30], arguing that: (i) all claims other than any constitutional claim arising from Plaintiff's protestation and refusal to sign the "inmate mattress contract" should be dismissed for failure to exhaust administrative remedies; (2) Plaintiff's Fifth Amendment "freedom of contract" claim fails to state a cause of action upon which relief may be granted; (3) Plaintiff's Eighth Amendment claim fails to state a cause of action upon which relief may be granted; (4) Defendants are entitled to qualified immunity; (5) Defendants United States, BOP, and FCI-McKean are not proper Defendants in a *Bivens* action; and (6) any attempt by Plaintiff to state a claim under the Federal Torts Claim Act ("FTCA") is not actionable because there is no allegation of physical injury.[2] Plaintiff has since filed a "motion in response" and brief

---

[2] Although the Court understands that Defendants raise the latter argument regarding a purported FTCA claim out of an abundance of caution, the Court neither discerns such a claim from Plaintiff's complaint, nor does Plaintiff explicitly raise such a claim (See ECF NO. 20, Amended Complaint, at Section III). Thus, the Court considers this argument moot and will not address it herein.

in response to Defendants' motion. [ECF Nos. 35 and 36, respectively]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff alleges that he received a new mattress for his cell on October 22, 2014, and was ordered by Defendant Zeher to sign a mattress contract acknowledging his receipt of the mattress and agreeing to pay damages of $91.00 if he failed to return the mattress to the unit, undamaged, upon his departure. (ECF No. 20, Amended Complaint, Section IV.C at ¶ 1). When Plaintiff asked what would happen if he refused to sign the contract, Defendant Zeher allegedly threatened to place him in "the hole." (Id. at ¶ 2). Nonetheless, Plaintiff refused to sign, and Defendant Zeher allegedly informed Defendant Smith of Plaintiff's refusal. (Id.). Defendant Smith then allegedly approached Plaintiff and threatened to withhold the mattress from Plaintiff during daytime hours if he refused to sign. (Id., at ¶¶ 2-3).

After Plaintiff continued to refuse to sign the contract, Defendant Zeher issued an incident report against Plaintiff on October 22, 2014, for "refusing to work or to accept a program assignment" (ECF No. 36-1 at p. 2), and Defendant Eklund ordered that Plaintiff be placed in administrative segregation. (ECF No. 20, Amended Complaint, at p. 6, ¶ 4). That same evening, Defendant Eklund issued another incident report against Plaintiff for refusing to obey an order after Plaintiff refused to state his registration number upon request. (ECF No. 31-2 at p. 4). Plaintiff was held in administrative segregation for five days and was released on October 27, 2014, at which time he was sanctioned to a ninety (90) day loss of preferred housing. (Id.; ECF No. 20, Amended Complaint, at p. 6, ¶ 6).

On October 27, 2014, Plaintiff began to seek redress through the administrative remedy process. (ECF No. 20, Amended Complaint, at p. 6, ¶ 7). On October 29, 2014, while at his assigned work detail, Plaintiff was allegedly threatened by Defendant Robicheau to refrain from filing complaints and appeals regarding the mattress contract or his employment would be terminated. When Plaintiff refused, Defendant Robicheau told him to no longer report to work. (Id. at ¶ 8).

On November 3, 2014, Plaintiff turned in a grievance to Defendant Smith, who allegedly threatened to make Plaintiff's time difficult if he decided to pursue the grievance. (Id. at ¶ 9). On November 4, 2014, after Plaintiff requested several more grievance forms, Defendant Smith wrote an incident report charging Plaintiff with offering a staff member a bribe and refusing an order. (Id. at ¶ 10; ECF No. 36-1, at p. 16). Plaintiff was subsequently found guilty of refusing to obey an order and was sanctioned to restricted commissary and restricted quarters for six months. (ECF No. 36-1, at pp. 18-19).

### C. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly

analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### **2. Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli

v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh

the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on

8

other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a pro se litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

#### 1. Defendants United States, BOP, and FCI McKean

Defendants' argue that Defendants United States, BOP, and FCI-McKean are not proper defendants in a *Bivens* action and should be dismissed from this case. The Court agrees.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983), citing United States v. Sherwood, 312 U.S. 584, 586 (1941). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994), citing Loeffler v. Frank, 486 U.S. 549, 554 (1988); Federal Housing Admin. v. Burr, 309 U.S. 242, 244 (1940). "A plaintiff attempting to sue any government agency, such as the Federal Bureau of Prisons or a specific prison, 'may not rely on the general federal question jurisdiction ... but must identify a specific statutory provision that waives the government's sovereign immunity.'" Manns v. Bureau of Prisons, 2006 WL 3813926, at *2 (W.D.Pa. Dec. 26, 2006), quoting Clinton County Commissioners v. United States Environmental Protection Agency, 116 F.3d 1018, 2021 (3d Cir. 1997)..

Importantly, *Bivens* does not act as a waiver of the Federal Government's sovereign immunity, and *Bivens* actions against federal entities are routinely dismissed for lack of subject-

matter jurisdiction. See, e.g., Kearse v. Bureau of Prisons, 2006 WL 2405721, at *3 (W.D.Pa. Aug. 18, 2006); Johnstone v. United States, 980 F.Supp. 148, 151 (E.D.Pa. 1997) (explaining that *Bivens* actions "may only be maintained against federal officers; sovereign immunity bars such actions against the United States or agencies thereof). Accordingly, Defendants United States, BOP, and FCI-McKean should be dismissed from this case for lack of jurisdiction.

### 2. Exhaustion of Administrative Remedies

Defendants contend that all claims, other than any constitutional claim arising from Plaintiff's protestation and refusal to sign the "inmate mattress contract," should be dismissed for his failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3]

#### a. Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### b. The Administrative Process Available to Federal Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days

from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### c. Analysis

In support of their contention that Plaintiff failed to exhaust his administrative remedies, Defendants have submitted the Declaration of Alisha Gallagher, a Paralegal Specialist with the BOP's Northeast Regional Office. Ms. Gallagher declares, in pertinent part, as follows:

> 8. [Plaintiff's] administrative remedy record reflects that the only administrative remedy he exhausted, which is related to the issues in the above-captioned civil action, is Administrative Remedy Number 802316… (regarding Plaintiff's protestation and refusal to sign the "Inmate Mattress Contract").

(ECF No. 31-1, Declaration of Alisha Gallagher, at p. 5, ¶ 8).

In his response to Defendants' motion, Plaintiff does not offer any evidence or argument challenging Ms. Gallagher's assertion that Administrative Remedy Number 802316 ("A.R. #802316") is the only grievance pertaining to the issues raised in this case that has been fully exhausted. Thus, any claims arising from issues that are not raised in said grievance must be dismissed for Plaintiff's failure to exhaust administrative remedies. To ascertain what those claims are, attention must be given to the issues that were raised in connection with A.R. #802316 throughout the administrative remedy process.

In his original grievance, Plaintiff claimed that requiring him to sign a contract in order to

13

obtain a new mattress deprived him of a "liberty interest that is protected by procedural due process guarantees," thus implicating a Fifth Amendment due process claim. (ECF No. 31-1, at p. 15). Plaintiff also asserted that, because he refused to sign the contract, he was subjected to "collateral consequences," including being placed in the Special Housing Unit, "loss of employment, loss of cell, and continued harassment from his Institutional Counselor Smith (unit BB)…" (Id.), thus outlining a claim of retaliation. In his appeal to the Regional Director, Plaintiff reiterated his due process claim, but not his retaliation claim, and added a claim of "deliberate indifference" based on the alleged threat that he would not receive a new mattress unless he signed the contract, which, according to Plaintiff, sought to deprive him of a "necessity that has been guaranteed as a right to each incarcerated individual." (Id. at p. 17).[6] In his final appeal to the BOP's Central Office, Plaintiff reiterated his due process and deliberate indifference claims, but like his Regional appeal, omitted any mention of retaliation or "collateral consequences." (Id. at p. 19).

To obtain full exhaustion, BOP regulations require inmates to appeal an issue or single complaint through all stages of the administrative remedy process (*i.e.*, institution, region, and central office). 28 C.F.R. §§ 542.10 - 542.19. As noted above, although Plaintiff initially raised an administrative claim of retaliation under the guise of "collateral consequences" in his original grievance, that claim was not specified in either of his subsequent appeals to the Regional Director or the Central Office. Plaintiff's failure to pursue his retaliation claim through each stage

---

[6] Although neither "deliberate indifference" nor the Eighth Amendment was mentioned in A.R. #802316, the Eighth Amendment was raised by Plaintiff in his initial Request for Administrative Remedy Informal Resolution Form,

14

of the administrative remedy process constitutes a failure to exhaust administrative remedies. Milton v. Ray, 301 Fed.Appx. 130, 133-34 (3d Cir. 2008) ("although [plaintiff] raised a First Amendment claim in his appeal to the Regional Director, he did not do so in his appeal to the Central Office. Because he failed to exhaust administrative remedies concerning any First Amendment violations, [plaintiff] cannot prevail on such a claim in federal court"). As a result, Plaintiff's First Amendment retaliation claims should be dismissed.

On the other hand, Plaintiff's remaining Fifth Amendment due process and Eighth Amendment deliberate indifference claims have been sufficiently presented throughout the administrative remedy process and should be deemed exhausted. The Court will, thus, proceed to address each of these claims on the merits.

### 3. Fifth Amendment Due Process Claim

In his amended complaint, Plaintiff alleges that "[r]efusing Plaintiff a mattress without him first contracting with FCI McKean violated Plaintiff's rights of Freedom of Contract under the Fifth Amendment." (ECF No. 20, p. 8). Defendants move to dismiss this claim based on the well-settled principle that there is no absolute right to freedom of contract recognized by the courts under the Fifth Amendment or any other amendment to the United States Constitution. See West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391-392 (1937) ("The Constitution does not speak of freedom of contract…. freedom of contract is a qualified, and not an absolute, right") The Court agrees with Defendants and finds that Plaintiff's Fifth Amendment claim should be dismissed insofar as it based on a purported violation of freedom of contract.

---

which preceded the filing of A.R. #802316. (See ECF No. 31-1, at p. 12).

Nonetheless, while conceding in his opposition brief that "Defendants' counsel is correct to cite that there is no absolute freedom of contract" (ECF No. 36, at p. 9), Plaintiff seeks to clarify that the crux of his Fifth Amendment claim is grounded in due process. In particular, Plaintiff asserts that his right to abstain from entering into contracts was violated when Defendants deprived him of his physical liberty without due process of law by placing him in segregation for refusing to sign the mattress contract. (Id. at pp. 9, 11). In short, Plaintiff claims that his confinement in FCI-McKean's Special Housing Unit for five days after he refused to sign the mattress contract violated his due process rights. However, even granting Plaintiff the latitude to restate his "freedom of contract" claim as a due process claim, by virtue of his *pro se* status, this Court finds that Plaintiff has fallen far short of demonstrating a cognizable due process claim.

To establish a due process claim, Plaintiff must demonstrate (i) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

The Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). "In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the

disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell, 318 F.3d at 531-32, citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the *Sandin* test." Mitchell, 318 F.3d at 532, comparing, *inter alia*, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(seven months of disciplinary confinement did not implicate a liberty interest), and Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (administrative detention for a period of 15 months, which imposed strict restrictions on outside contact and personal conveniences, did not impose atypical and significant hardship and, thus, did not implicate a liberty interest).

Nonetheless, it appears clear that, in determining what constitutes an "atypical and significant hardship" for those in disciplinary confinement, the relevant inquiry is "whether the conditions of [the inmate's] confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." Shoats, 213 F.3d at 144. See also Leamer v. Fauver, 388 F.3d 532, 546 (3d Cir. 2002)("under *Sandin* a court must assess whether administrative segregation, or its concomitant conditions, constitute an 'atypical and significant hardship' by comparing the circumstances of [the inmate's] placement with those of others within comparable confinement").

Here, Plaintiff has not pled any facts to indicate that his liberty interests were implicated by his confinement at FCI-McKean for a brief period of five days. Nothing in the complaint alleges any condition of confinement that was appreciably different from the conditions of other similarly situated inmates. Because Plaintiff has failed to show that his conditions of confinement in the SHU were "significantly more restrictive than those imposed upon other inmates in solitary confinement" pursuant to Shoats, he has failed to establish the deprivation of a liberty interest. See Dantzler v. Beard, 2007 WL 5018184, at *7 (W.D.Pa. Dec. 6, 2007). It follows, therefore, that Plaintiff has failed to sufficiently allege a cognizable Fifth Amendment due process claim and the same should be dismissed.

### 4. Eighth Amendment Claim

Lastly, Plaintiff claims that placing him in segregation for refusing to contract violated his rights under the Eighth Amendment. (ECF No. 20, Amended Complaint, at p. 8). Defendants argue that Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted. Once again, the Court agrees.

The failure to provided inmates with humane conditions of confinement can in some cases amount to cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted). To prevail on a conditions-of-confinement claim, a plaintiff must prove two elements. First, "the deprivation alleged must be, objectively, 'sufficiently serious[.]'" Id. at 834. As the Supreme Court has explained, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991), quoting Rhodes v. Chapman, 452 U.S.

337, 347, 101 (1981). Prison officials must, therefore, ensure that inmates have access to adequate food, clothing, shelter, warmth, medical care, and exercise. See Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 298. "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical activities such as plumbing, ventilation and showers." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) citing Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990)).

Second, the defendant "must have a 'sufficiently culpable state of mind,'" which in this context means "deliberate indifference." Farmer, 511 U.S. at 834, quoting Wilson, 501 U.S. at 297). A person acts with "deliberate indifference" if he "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837. This is a purely subjective standard, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers–Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Here, Plaintiff has not alleged, let alone brought forward evidence, that he was denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." Griffin, 112 F.3d at 709. Moreover, Plaintiff was only confined in the SHU for a period of five days. "Administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981). Accordingly, Plaintiff's Eighth Amendment claim should be dismissed.

**III.    CONCLUSION**

Based on the foregoing, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [ECF No. 30], be granted and that this case be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  February 15, 2017

cc:    The Honorable Barbara Rothstein
       United States District Judge